## BUKER v. STEELE.

### (Monroe County Court. July 11, 1896.)

1. CORPORATIONS—RIGHT TO INSPECT BOOKS—DEMAND.
    A demand by a stockholder for all the books of a corporation for the purpose of inspecting them is not such a demand for the "stock book" required by law to be kept "open daily for inspection" (Laws 1892, c. 688, § 29) as will support an action for the penalty therein provided for a refusal to exhibit the stock books or allow the books to be inspected.

2. SAME—DEMAND—WHEN TO BE MADE.
    The only demand which can be made the basis of an action under Laws 1892, c. 688, § 29, subjecting to a penalty any officer of a corporation who

refuses a stockholder an inspection of the company's books, is a demand made during business hours, and at the office of the corporation where the books are kept.

**3 SAME—CONSTRUCTION OF STATUTES—PENALTY.**

1 Rev. St. p. 601, § 1 (Laws 1825, p. 448), giving stockholders the right to inspect the books of the corporation for 30 days before the election of directors, was applicable to a mutual building and loan association organized under Laws 1851, c. 122, which contained no provision to that effect; and hence, when that provision was repealed, and Laws 1890, c. 564 (Stock Corporation Law), was substituted therefor, the officers of such corporation became liable to a penalty under section 29 for any refusal to permit a stockholder to inspect its books at any time during business hours, since such association was a stock company.

**4. SAME—STOCK BOOKS—REFUSAL TO EXHIBIT.**

Corporation books in which were the names of owners of stock, the number of shares held by each, and the amount paid thereon, contain substantially the information required by Laws 1892, c. 688, § 29, to be kept in a "stock book"; and hence an officer having charge of the books is liable to the penalty prescribed by said section 29 for refusing to exhibit them to a stockholder, though the books may be called by a different name, and may not comply in detail with the requirements of the statute.

**5. SAME—MEMBERSHIP—CERTIFICATE OF STOCK.**

It is no defense, to an action by a stockholder for a statutory penalty against an officer of a corporation for refusing him an inspection of the books of the company, that no certificate of stock had ever been issued to him, since a certificate is merely the evidence of title to stock.

**6. SAME—ARREARAGE IN DUES—EFFECT ON MEMBERSHIP.**

A member of a building association does not, because he is in arrears of dues, and is not entitled to vote under the constitution of the association, lose his membership under Laws 1892, c. 687, § 3 (General Corporation Law), providing that the term "member of a corporation" shall include every person having a right to vote at a meeting for the election of directors, since the law does not state that the term "member" shall include no one except a person having a right to vote.

**7. SAME—PENALTY—THE "PARTY INJURED."**

A denial of the right to a stockholder to inspect the books of the corporation is the injury contemplated in Laws 1892, c. 688, § 29, giving "the party injured" a right of action against the officer of the corporation who has the books in charge, and refuses such inspection.

Action by Amos M. Buker against John M. Steele for a statutory penalty. Judgment for plaintiff.

George D. Reed, for plaintiff.
Porter M. French, for defendant.

SUTHERLAND, J. This action is brought to recover penalties, under section 29 of the stock corporation law (chapter 564, Laws 1890, as amended by chapter 688, Laws 1892), which reads as follows:

"Every stock corporation shall keep at its office, correct books of account of all its business and transactions, and a book to be known as the stock-book, containing the names, alphabetically arranged, of all persons who are stockholders of the corporation, showing their places of residence, the number of shares of stock held by them respectively, the time when they respectively became the owners thereof, and the amount paid thereon. The stock-book of every such corporation shall be open daily, during business hours, for the inspection of its stockholders and judgment creditors, who may make extracts therefrom. * * * Every corporation that shall neglect or refuse to keep or cause to be kept such books, or to keep any book open for inspection as herein required, shall forfeit

to the people the sum of fifty dollars for every day it shall so neglect or refuse.. If any officer or agent of any such corporation shall willfully neglect or refuse to make any proper entry in such book or books, or shall neglect or refuse to exhibit the same, or allow them to be inspected and extracts taken therefrom as provided in this section, the corporation and such officer or agent shall each forfeit and pay to the party injured a penalty of fifty dollars for every such neglect or refusal, and all damages resulting to him therefrom."

The Leighton Lea Association was incorporated under chapter 122, Laws 1851, entitled "An act for the incorporation of building, mutual loan and accumulating fund associations." Plaintiff is a stockholder in the corporation, and seeks to recover three separate penalties for three distinct refusals on the part of the defendant, as treasurer, to exhibit to the plaintiff the stock book of the association, and to permit him to make extracts therefrom.

I am not satisfied from the evidence that a specific demand was made on the first occasion for the particular book which section 29 of the stock corporation law says shall be "open daily for inspection"; and, in my opinion, a general demand for all of the books of the corporation, such as was made at that time, is not sufficient to fasten upon the defendant the penalty sought to be inflicted.

The second demand was not made at the defendant's office, as treasurer of the association. Defendant did not have the stock book with him at the time the demand was made, and it would be unjust for a penalty to attach for a demand and refusal made under such circumstances. The only demand which can be made the basis of an action under the section referred to is a demand made at a reasonable time, during business hours, at the office of the corporation where the stock book is kept. It appears that on the 11th day of May,—the third occasion,—at the office of the treasurer of the Leighton Lea Association, the plaintiff made a specific demand for the stock book, or book containing the names of the stockholders, and that the defendant absolutely refused plaintiff the right to inspect it and to take extracts therefrom. It is claimed on behalf of the defendant—First, that the Leighton Lea Association is not a stock corporation, within the meaning of the general and stock corporation law; second, that this corporation kept no stock book, and therefore the defendant cannot be held liable for refusing to exhibit a book which had no existence; third, that plaintiff, at the time the demand was made, was neither a stockholder nor a member of the corporation; and, fourth, that the plaintiff cannot recover, because he has not shown that he has in any way been injured by defendant's refusal.

Chapter 122, Laws 1851, under which the Leighton Lea Association was organized, contains no provision, in express terms, giving to members of such associations the right to inspect their books. But it is difficult to perceive anything in the relation of a stockholder to a corporation organized under this act affording a reason why such stockholder should be refused the right of inspection given by the general law. These associations are organized, not for charitable purposes, not to afford social enjoyment to the members, nor for literary or scientific purposes, but as a matter of business,

for the promotion of the financial interests of the members of such associations. The interest of each member in the property of the corporation is measured by the amount of stock which he holds, and the amount of money which he has paid into its treasury. Nor is there an absence of opportunity in the life of these institutions for the perpetration of frauds upon the stockholders by those intrusted with the control of affairs. And the legislature has not withheld from the members of such associations the rights which are accorded to the ordinary investor in the stock of business corporations. From 1825 down to 1890 the statutes contained a general provision that the books of any incorporated company in this state containing the names of the stockholders in such company should, at all reasonable times during the usual hours of transacting business, be open to the examination of every stockholder of such company for 30 days previous to the election of directors, and a penalty of $250 was provided for, to be paid by any officer of such corporation having charge of such books, who should, upon demand, refuse to exhibit them to any stockholder. Laws 1825, p. 448, § 1; Rev. St. pt. 1, c. 18, tit. 4, § 1. This provision of the Revised Statutes was repealed by chapter 564, Laws 1890, known as the "Stock Corporation Law." In place of the provision repealed, the legislature substituted section 29. The old statute did not, in express terms, require a corporation to keep a book containing a list of its stockholders, the legislature evidently assuming that no corporation would fail to keep some kind of a book containing the names of its stockholders. Section 29 of the new law differs from the former provision, in that it contains a positive command that the directors of every corporation shall keep a book containing the names of the stockholders, and requires that the names shall be alphabetically arranged, and that the book shall show the residences of the stockholders, the number of shares held by them respectively, the time when they became owners thereof, and the amount paid thereon. The former provision of the Revised Statutes was applicable to this corporation. The old law remained in full force until May 1, 1891. The Leighton Lea Association was incorporated March 13, 1891, and I do not think the subsequent change in the law took away from its stockholders the protection afforded by the Revised Statutes; on the contrary, the new provision was intended to give to them even greater security than was afforded under the prior law. The general corporation law (chapter 563, Laws 1890, as amended by chapter 687, Laws 1892) says: "A corporation shall be either a municipal corporation, a stock corporation, a nonstock corporation or a mixed corporation." The term "mixed corporation" appears only in section 2 of the general corporation law. As first projected, the revision of the corporation laws was to include a chapter to be known as "The Mixed Corporation Law." Such chapter was finally abandoned, and the term "mixed corporations" dropped by the commissioners of revision. See note to section 2, Gen. Corp. Law (2 Rev. St. [9th Ed.] p. 974). Subdivision 3, c. 687, Laws 1892, defined a mixed corporation as "a corporation which may or may not have capital stock at

its option." Evidently, the Leighton Lea Association is not one of the corporations which the commissioners intended to group together under the head of "mixed corporations." A stock corporation is defined as "a corporation having capital stock divided into shares, and which is authorized by law to distribute to the holders thereof dividends or shares of the surplus profits of the corporation." The Leighton Lea Association falls clearly within this statutory definition. It has capital stock of 200 shares of $600 each. It is authorized by law to distribute to the members thereof dividends or shares of the surplus profits of the corporation. Section 7, c. 122, Laws 1851, as amended by chapter 564, Laws 1875, provides as follows: "The trustees of any association formed under the provisions of this act may, from time to time, declare dividends from the earnings of the association, payable in such manner as may be provided in the articles of association." In the articles of association of the Leighton Lea Association, under the powers of the board of directors specified in section 5, art. 1, is the right to declare dividends; and section 7, art. 2, provides that "dividends of any surplus funds, after the payment of all debts and liabilities, shall be made and paid to members in proportion to the dues paid on their shares respectively." If this association should prosper financially, it is easy to see how, after the payment of the purchase price of the land and the making of improvements thereon, there might be a surplus to be divided among the members in the shape of dividends. Not only does the association come clearly within the general definition of a "stock corporation," but its precise position in the classification of stock corporations is pointed out by the stock corporation law. The legislature has declared that a stock corporation shall be either a moneyed corporation, a transportation corporation, or a business corporation. The Leighton Lea Association falls within the classification of "moneyed corporations." A moneyed corporation is defined as "a corporation formed under or subject to the banking or insurance law"; and under the banking law (chapter 689, Laws 1892), among the corporations made subject to the visitation and supervision of the state banking department are included building, mutual loan, and accumulating fund associations theretofore organized, and doing business at the time the banking law took effect. See Banking Law, art. 1, §§ 2, 8, 20; and also Id. art. 5.

It is also contended that the corporation kept no stock book such as is described by the statute, and therefore the defendant cannot be held liable for refusing to exhibit a book which had no existence. The defendant kept two books containing a list of the members of the association, the second book being a continuation of the first. In the first book the names were alphabetically arranged. The book showed how many shares of stock were held by each stockholder, and how much had been paid from time to time upon that stock. The rules of the association required weekly payments upon the stock in the form of dues, and each payment was credited to each stockholder upon each separate share of stock in these

books, under the date of each weekly payment. Substantially all of the stock that was ever issued or subscribed for was taken at about the time of the organization of the association. Some of the members subsequently transferred their stock to others, but these books do not show, in each instance, the date of the transfer. They do show the names of the transferees, but as to original subscribers the dates of first payment of dues show when they became stockholders. After the tract of land purchased by the association had been subdivided, and the lots had been apportioned among the members, each member took one lot for each share of stock held by him, agreeing to pay to the association the value of that lot as it had been fixed, and was credited upon the purchase price of the lot whatever money he had paid in upon his stock. Thereafter the names of the stockholders were rearranged for convenience, not alphabetically, but in accordance with the numbers of the lots drawn by them, respectively. These two membership books, or roll books, are virtually one, and contain the information which it was the intention of the statute to make available to every stockholder, with the possible exception that they do not show in all instances the dates when shares of stock were transferred, and the residences of stockholders are not shown. It was the duty of the defendant, in whose custody these books were kept, to comply with the directions of the statute, and arrange those names alphabetically, and note upon the book the date of transfer of the stock, and also the residences of the stockholders. Can he now take advantage of his own neglect, and be permitted to set up as a defense that the book which was called for did not conform in all respects to the book required by the statute to be kept? I think not. At the time the association was incorporated, this book conformed to the provisions of the statute, and for a refusal to exhibit it the defendant would have been liable to a penalty. The new statute made it the duty of the officers of the corporation to record in that book certain other facts, which they have failed to do. It would defeat the very object for which the statute was framed, and, in my judgment, would be altogether too technical a construction to be placed upon the statute, to hold that defendant's failure to carry out, in its fullest details, the directions of the statute, excuses him thereafter from exhibiting the stock book on demand. In Cotheal v. Brouwer, 5 N. Y. 562, which was an action brought to recover a penalty under the provisions of the Revised Statutes to which reference has been made, Judge Paige says: "The statute under consideration, although penal as to the defendant, is beneficial generally, and should therefore be equitably construed." The new provision should be construed as a continuation of the former, amended or modified according to the language employed in the new. Gen. Corp. Law, § 36.

Defendant also claims that the plaintiff, at the time he made the demand, was neither a stockholder nor member of the corporation, because no certificate of stock had ever been issued to him, and because he was in default in the payment of dues. A certifi-

cate is merely the stockholder's evidence of title to his stock; and the fact that no certificate, in the ordinary form, was ever issued to the plaintiff, is no defense. 1 Cook, Stock, Stockh. & Corp. Law, § 192.

We are asked to hold that he is not a member of the corporation because, by reason of the nonpayment of dues after December, 1894, when trouble arose between plaintiff and the association, plaintiff did not have the right, under the constitution of the association, to vote on the shares of stock held by him; and reference is made to the provisions of the general corporation law (section 3, subd. 8), which says: "The term, member of a corporation, shall include every person having a right to vote at a meeting of the corporation for the election of directors, other than a person having a right to vote only upon a proxy." It is not there stated that the term "member" shall include no one except a person having a right to vote. Such a construction leads to absurdity. To illustrate: The stock corporation law provides that no one shall vote upon shares who has not been an owner of those shares for at least 10 days. If defendant is sound in his argument, no person can be called a member of a corporation until he has held stock therein for 10 days, during which time none of the provisions of the law for the protection of stockholders are applicable to his case. It seems hardly necessary to answer the suggestion.

It is further contended that plaintiff cannot recover because it has not been shown that he was in any way injured by the defendant's refusal. The penalty is "to the party injured." Similar language was employed in the general manufacturing act (Laws 1848, c. 40, § 25); and in Kelsey v. Fermentation Co. (Sup.) 3 N. Y. Supp. 723, it was held by the general term, Fifth department, that a denial of the right to inspect is the injury contemplated, and was sufficient to subject the defendant to the penalty imposed by the manufacturing act. This authority seems conclusive upon the point.

It may be added, in conclusion, that the controversy over the right of plaintiff to examine this book seems to have arisen, not because of any claim, made at the time, that the book called for did not answer the description of the stock book required by the statute to be kept, nor as to the plaintiff's status as a stockholder of the association, but rather on the question of the applicability of section 29 of the stock corporation law to the Leighton Lea Association.

The plaintiff, in my opinion, has established his right to recover of the defendant the statutory penalty of $50 for the refusal to the demand of May 11th.