JAMES B. RATHBONE, as Trustee in Bankruptcy of ELMIRA STEEL COMPANY, a Bankrupt, Appellant, *v.* F. WAYLAND AYER, Respondent, Impleaded with CHESTER R. BAIRD and Others.  (No. 2.)

*Trustee in bankruptcy of a corporation — he may maintain an action to recover subscriptions unpaid on capital stock — he cannot enforce the stockholders' statutory liability for debts — the latter liability is penal in its nature — the right to enforce it is vested in the creditors — what complaint by such trustee for unpaid subscriptions is not demurrable — call for subscriptions, an order directing suit and a demand of payment, when unnecessary.*

The liability imposed by section 54 of the Stock Corporation Law (Laws of 1892, chap. 688, as amd. by chap. 354 of the Laws of 1901), which creates a liability on the part of stockholders of every stock corporation for the debts thereof where the whole amount of its capital stock has not been fully paid, is wholly statutory and in the nature of a penalty.

The right to enforce such liability is vested in the creditors and not in the corporation, and does not pass to a trustee of the corporation appointed in bankruptcy proceedings.

Unpaid subscriptions to the capital stock of a corporation are debts belonging to the corporation which the corporation itself can collect, and are, therefore, assets of the corporation which pass to the trustee in bankruptcy.

The complaint in an action brought by the trustee in bankruptcy of a corporation alleged that the corporation was organized with a capital stock of $500,000 divided into 5,000 shares of $100 each; that the certificate of incorporation fixed the amount with which the corporation should begin business at $500,000; that the corporation, after transacting business for some time, had been declared bankrupt and that the plaintiff had been appointed trustee thereof; that the defendant Ayer subscribed for 800 shares and the defendant Baird for 50 shares of the stock; that the other subscribers were all non-residents and without the jurisdiction of the court except one Diven, who subscribed and paid for 1 share.

The complaint further alleged that the defendants had failed to pay any part of their subscriptions to the capital stock of the corporation and had refused to do so, claiming that they had already paid their subscriptions; that claims against the corporation had been filed with the plaintiff in an amount which exceeded the assets in his hands by the sum of $106,000. Judgment was demanded against each defendant for a sum equal to the par value of the stock to which he subscribed.

*Held,* that the failure of the complaint to allege that a call had been made for these subscriptions pursuant to section 43 of the Stock Corporation Law, which provides that subscriptions to the capital stock shall be paid at such times and in such installments as the board of directors may, by resolution, require, did not render it demurrable, for the following reasons: *First,* that it appeared from the terms of the certificate of incorporation that the subscriptions were to be paid before the corporation commenced business, and, *second,* that upon the corporation becoming insolvent, the right to call for unpaid subscriptions passed to the trustee in bankruptcy;

That, assuming that the trustee in bankruptcy was only entitled to collect so much of the unpaid subscriptions as were necessary to pay the debts of the corporation, it was not necessary for him to obtain an order from the court levying an assessment on the unpaid subscriptions before commencing the action, for the reason that the complaint alleged that the unpaid debts exceeded the full amount of the unpaid subscriptions sought to be recovered in the action and that the subscribers, other than the defendants, were non-residents and without the jurisdiction of the court;

That the complaint sufficiently alleged a demand by the trustee of payment of the unpaid subscriptions, and that, even if it did not, the allegation of the complaint that the defendants claimed to have paid their subscriptions did, of itself, excuse the failure to make a demand;

That from the allegation that the defendants claimed to have paid the amount of their subscriptions, there might be inferred a delivery of the stock, which would operate as a consideration for the defendants' promise to pay their subscriptions, or a waiver of such delivery.

APPEAL by the plaintiff, James B. Rathbone, as trustee in bankruptcy of Elmira Steel Company, a bankrupt, from an interlocutory judgment of the Supreme Court in favor of the defendant, F. Wayland Ayer, entered in the office of the clerk of the county of Chemung on the 6th day of December, 1902, upon the decision of the court, rendered after a trial at the Broome Special Term, sustaining said defendant's demurrer to the plaintiff's complaint.

The complaint shows the appointment of the plaintiff as trustee in bankruptcy of the Elmira Steel Company, a bankrupt; that the said company was organized with a capital stock of $500,000, divided into 5,000 shares of the par value of $100 each; that the certificate of incorporation fixed the amount with which the corporation should begin business at $500,000; that the defendant Ayer was a subscriber for 800 shares, and the defendant Baird for 50 shares of said stock; that the other subscribers are all non-residents and without the jurisdiction of the court, except one George M. Diven, who was a subscriber to one share which was paid; that the said corporation was actively engaged in business until October 1, 1900, and that at all times since December, 1900, the said company has been inactive and defunct; that the plaintiff has converted the other assets of the corporation into cash; that the value of such estate amounts to $110,000; that claims have been allowed by the plaintiff to an amount of upwards of $216,000. It further shows that the said defendants have failed to pay any part of their subscription to the capital stock of the said corporation, and that each of said defendants claims that he has paid the amount of such subscription, and refuses to pay the sum of his said subscription or the par value of such stock so subscribed by him, or any part thereof. Judgment is thereupon asked against each defendant for a sum equal to the par value of the stock to which he so subscribed. To this complaint the defendant Ayer has demurred upon the grounds that the plaintiff has not legal capacity to sue; that there is a defect of parties plaintiff in that the creditors of said company should have been joined as plaintiffs; that there is a defect of parties defendant in that the creditors of said corporation should have been joined as defendants; and that the complaint does not state facts sufficient to constitute a cause of action. The demurrer was sustained upon the ground that the complaint did not state a cause of action in that it

failed to state that the obligation of defendants was due at the time of the commencement of the action. From the interlocutory judgment thus entered, plaintiff has appealed.

*Frederick Collin* and *Edward G. Herendeen,* for the appellant.

*H. H. Rockwell,* for the respondent.

SMITH, J.:

By section 54 of the Stock Corporation Law (Laws of 1892, chap. 688, as amd. by Laws of 1901, chap. 354), as it read at the time of the commencement of this action, the holders of capital stock not fully paid in any stock corporation were made personally liable to its creditors to an amount equal to the amount unpaid on the stock held by them for debts of the corporation contracted while such stock was held by them. This liability is wholly statutory and in the nature of a penalty. It is by the statute given to the creditors and not to the corporation, and clearly it does not pass to a trustee in bankruptcy. The plaintiff does not rest his right upon this statute or claim aught therefrom.

The action is brought to recover unpaid subscriptions for stock. These unpaid subscriptions are claimed to be debts belonging to the corporation which the corporation itself could have collected, and, therefore, assets of the corporation which pass to the trustee in bankruptcy. This claim seems to be fully supported by the authorities. In *Sanger* v. *Upton* (91 U. S. 56) the head note in part reads: "As the company might have sued a stockholder for his unpaid subscription at law, the assignee succeeding to all its rights, has the same remedy." In *Stoddard* v. *Lum* (159 N. Y. 272) the opinion in part reads: "This (unpaid stock subscription) is a contract liability pure and simple, and one that the corporation, if solvent, could have enforced in the courts of this State. This cause of action, in the event of corporate insolvency, vests in the general assignee for the benefit of creditors, or in a receiver duly appointed." In *Lang* v. *Lutz* (39 Misc. Rep. 4) Justice KENEFICK, at Special Term, in discussing this question, says: "The amount unpaid upon his stock is a debt which the delinquent stockholder owes the corporation and which the corporation or its legal representative can enforce (*Stoddard* v. *Lum,* 159 N. Y. 265) or which could be enforced by a bill in

equity filed by a creditor in behalf of all the creditors against the corporation and all the delinquent stockholders."

It is urged on behalf of the respondent that although these unpaid subscriptions be assets of the corporation, they have not become due and payable for the reason that no proper call has been made. By section 43 of the Stock Corporation Law, subscriptions to the capital stock of a corporation are required to be paid at such times and in such installments as the board of directors may by resolution require. It is urged that the complaint does not show any call by the board of directors, nor in the absence of a call by the board of directors any assessment by the court and order directing the collection of the assets as the only legal substitute therefor by which the liability to pay at a certain time can become fixed. To this contention I think there are two answers. By the certificate of incorporation, to which this defendant was a party, this corporation was to commence business with the full amount of capital stock paid in. The complaint shows that the corporation not only commenced business, but had continued until it became bankrupt, and that it had now ceased doing business. It, therefore, appears that the time when these subscriptions were to become payable had long since accrued. In such case no call or demand of the board of directors is required. (*Phœnix Warehousing Co.* v. *Badger*, 67 N. Y. 294.)

But upon insolvency the right to call for unpaid subscriptions passes to the representative in bankruptcy. In such case the directors could not relieve defendants from liability by refusing to issue a call. In *Ross-Meehan Brake Shoe Foundry Co.* v. *Southern Malleable Iron Co.* (72 Fed. Rep. 957) it is held that, when a corporation is insolvent and proceedings are pending instituted by creditors to wind up and distribute its assets, no call or assessment is necessary before the institution of suits to collect unpaid balances on subscriptions to its stock. In *Hatch* v. *Dana* (101 U. S. 215) Justice STRONG, in writing for the court, says: "In bankruptcy an assessment or a call may be made, for the assignee of a bankrupt corporation succeeds to its rights and becomes the legal owner." In *Scovill* v. *Thayer* (105 U. S. 143) it was held that an action for an unpaid subscription could not be made until an order of the Bankruptcy Court was made "*or some authorized demand upon*

*the stockholder to pay the balance due on his stock.*"  In *Matter of Crystal Spring Bottling Co.* (96 Fed. Rep. 945) an application was made to the Bankruptcy Court for an order directing suit to recover unpaid balances of subscriptions.  The expression there used that a call could only be made by a trustee " under direction of the court" does not necessarily mean by order previously made.  By section 47 of the Bankruptcy Law (30 U. S. Stat. at Large, 557), trustees are required to collect and reduce to money the property of the estate " under the direction of the court."  In *Chism* v. *Bank* (5 Am. Bank. Rep. 56) the Supreme Court of Mississippi has held that notwithstanding this provision it was the plain duty of the trustee to collect the debts of the estate without waiting for the specific direction of the court.  " He is clothed by his appointment with the legal title to the estate of the bankrupt, and it is his duty to collect by suit if necessary the debts due to it, and his failure to do so would render him liable for any loss incurred thereby.  His right to sue is incident to his title and duty in the premises, and it is not necessary for him to obtain an order of the bankrupt court to justify him in maintaining a suit for the protection of the rights of the estate."  In *Matter of Mersman* (7 Am. Bank. Rep. 47) the opinion of HOTCHKISS, Referee, in part reads: " The suggestion is made that trustees in bankruptcy may on their own motion begin actions to set aside alleged fraudulent or preferential transactions of the bankrupt.  They may, but it is not to be doubted that the referees in charge, having general power to supervise their acts, have also power to order the withdrawal of suits already begun without leave."  (See, also, *Rankine* v. *Elliott*, 16 N. Y. 379.)

Nor is it necessary to go into the Bankruptcy Court to ascertain the amount of the indebtedness.  By the complaint it appears that the claims allowed against the bankrupt corporation are in excess of the full amount of the unpaid subscriptions sought for in this action, and that all the other subscribers are non-residents and without the jurisdiction of the court.  These facts are admitted by the demurrer.  Assume for the argument that the trustee in bankruptcy has only the right to collect so much of the unpaid stock subscriptions as is necessary to pay the debts.  If the debts were less than the unpaid stock subscription a necessity might well be held to arise for an

assessment by the Bankruptcy Court, and such an assessment might well be held to be a condition precedent to the right to proceed against the delinquent stockholder. Where, however, the indebtedness exceeds the amount claimed as an unpaid subscription, it has been held that an assessment is unnecessary before an action may be brought to recover the amount unpaid thereupon. In *Citizens & Miners' Savings Bank* v. *Gillespie* (115 Penn. St. 564) it is held, " in an action to recover the unpaid subscription on stock by the assignee for the benefit of creditors of an insolvent corporation, there can be no recovery, unless an assessment has first been made or the jury find from the evidence that the whole of the unpaid subscriptions is necessary to pay the creditors of the corporation." Mr. Justice PAXSON, in writing for the court, says: " There being no assessment in evidence, the learned judge left it to the jury to find whether the whole of the unpaid subscription was required to pay the debts of the company. We see no error in this. If all the unpaid subscriptions were required to pay the creditors, no assessment was necessary under the authority of *Yeager* v. *Scranton Trust Co.*\* (14 W. N. C. 296). \* \* \* Upon the insolvency of a corporation a stockholder is liable for only so much of his unpaid subscription as may be required to pay the creditors. Hence he may not be called upon in an arbitrary way to pay any sum that an assignee or creditor may demand. It is, therefore, requisite to ascertain in an orderly manner the extent of a stockholder's liability before proceedings are commenced to enforce it. But the necessity for this does not exist when the whole amount is required to pay the debts. Hence in such cases, as was said in *Yeager* v. *Scranton Bank* (*supra*), an assessment is not essential. The assignee may sue at once for all is required." (See, also, *Swearingen* v. *Dairy Co.*, 198 Penn. St. 75.) The admitted fact that the debts exceed the unpaid subscription takes this case out of the rule laid down in *Scovill* v. *Thayer* (*supra*), and as recognized in *Citizens & Miners' Savings Bank* case just cited, to the effect that a prior assessment is a condition precedent to the right to bring the action.

We think the complaint sufficiently alleges a demand by the trustee of payment of these unpaid subscriptions. It alleges a

---

\* *Yeager* v. *Scranton Trust Co. & Savings Bank.*

refusal on the part of the defendants to pay the plaintiff therefor. The allegation that the defendants claim that this amount was paid would of itself excuse a demand, even if a demand were otherwise necessary beyond the actual bringing of the suit, as in such a case a demand would be useless. From the allegation of the claim of payment by defendant may also be inferred a delivery of the stock or a waiver thereof, which would operate as a consideration for the promise.

Without discussing in detail the cases cited by respondent's counsel, it is sufficient to say that decisions which at first glance may seem to be antagonistic to the conclusion here reached are reconciled when found to be in actions brought under section 54 of the Stock Corporation Law (*supra*), or under similar statutes. The liability imposed by that section is not in any way inconsistent with, but is clearly in supplement of the contract liability to pay to the corporation the subscriptions made, or so much thereof as may be necessary for the proper conduct of the business of the corporation or for the payment of its debts.

We are of opinion, therefore, that the complaint states a good cause of action, and that the demurrer should have been overruled.

All concurred.

Judgment reversed and demurrer overruled, with usual leave to answer on payment of costs in this court and in the Special Term.