LEIGHTON v. LEIGHTON LEA ASS'N et al.

(Supreme Court, Equity Term, Monroe County.   December, 1908.)

1. BUILDING AND LOAN ASSOCIATIONS (§ 42*)—INSOLVENCY—"STOCK CORPORA-
   TION."
   Under General Corporation Law, Laws 1890, p. 1061, c. 563, § 2, de-
   fining a stock corporation as a corporation having capital stock divided
   into shares, a building association formed under Laws 1851, p. 234, c.
   122, and having capital stock divided into shares, is a stock corporation
   within Stock Corporation Law, Laws 1890, p. 1066, c. 564, defining the
   liabilities of stockholders of stock corporations.
   
   [Ed. Note.—For other cases, see Building and Loan Associations, Dec.
   Dig. § 42.*

   For other definitions, see Words and Phrases, vol. 7, p. 6664.]

2. BUILDING AND LOAN ASSOCIATIONS (§ 42*)—STOCKHOLDERS—LIABILITIES—
   STATUTES—CONSTRUCTION.
   While the stockholders of a building association formed under Laws
   1851, p. 234, c. 122, before Stock Corporation Law, Laws 1890, pp. 1078,
   1079, c. 564, §§ 57, 58, and 72, defining the liability of stockholders, and
   declaring that no stockholder shall be personally liable for any cor-
   porate debt not payable within two years from the time it was contract-
   ed took effect, are not liable for a debt created after the law took
   effect by the association purchasing real estate on its credit, where the
   price was not to be paid until 10 years after the purchase, where the
   land was purchased by the association for the benefit of its members
   and was subdivided into lots, which were apportioned among the mem-
   bers at an agreed valuation, the sums due from the members on such
   land was an asset of the association which the creditors of the associa-
   tion might pursue in equity, either through a receivership, or by an ac-
   tion against the corporation, and the stockholders indebted to the
   association on behalf of all creditors who come in and establish claims.
   
   [Ed. Note.—For other cases, see Building and Loan Associations, Dec.
   Dig. § 42.*]

3. CORPORATIONS (§ 90*)—STOCKHOLDERS—LIABILITIES—STATUTES—CONSTRUC-
   TION.
   A corporation cannot invoke the statutory remedy against stockhold-
   ers, which is given only to the creditors of the corporation, and which
   is exercised by them without the aid of the corporation or its presence
   as a party.
   
   [Ed. Note.—For other cases, see Corporations, Dec. Dig. § 90.*]

4. BUILDING AND LOAN ASSOCIATIONS (§ 24*) — INCORPORATION — POWERS —
   STATUTES.
   A building association formed under Laws 1851, p. 234, c. 122, authoriz-
   ing the formation of associations to accumulate a fund to purchase real
   estate, erect buildings, aid its members in acquiring real estate, and
   accumulate a fund to be returned to its members, etc., has authority to
   purchase real estate for its members and pledge its credit for the price,
   pursuant to a scheme to divide the land into lots and apportion the same
   among the members at an appraised value.
   
   [Ed. Note.—For other cases, see Building and Loan Associations, Dec.
   Dig. § 24.*]

5. BUILDING AND LOAN ASSOCIATIONS (§ 42*)—POWER OF ASSOCIATIONS—
   ESTOPPEL.
   Where the scheme of a building association, formed under Laws 1851,
   p. 234, c. 122, to purchase land on the credit of the association and divide
   the same into lots and apportion them among the members at an ap-
   praised value, was actively promoted by the members with knowledge of
   the terms of the indebtedness incurred by the association to the vendor,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the members ratified the act of the association in pledging its credit for the price, and could not urge that the act of the association was ultra vires.

[Ed. Note.—For other cases, see Building and Loan Associations, Dec. Dig. § 42.*]

6. CORPORATIONS (§ 261*)—STOCKHOLDERS — LIABILITY — ENFORCEMENT — ACTIONS.

Code Civ. Proc. § 1628, providing that after an action to foreclose a mortgage has been instituted, or after the rendition of judgment therein, no other action to recover any part of the mortgage debt shall be begun without the permission of the court, when construed in connection with section 1627, authorizing plaintiff, in a foreclosure suit, to join as defendants all who are liable for the payment of the mortgage debt, does not refer to an action supplemental to and in aid of a judgment of deficiency to reach assets of the mortgagor, a corporation, and apply them to the payment thereof, and does not prohibit the bringing of an action without first obtaining the permission of the court to enforce the liability of stockholders of the corporation.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 261.*]

7. CORPORATIONS (§ 237*)—STOCKHOLDERS—LIABILITY.

Where a note executed by a corporation was not payable within two years from its date, or where an action was not commenced against the corporation within two years from the maturity thereof, the stockholders were not liable for the indebtedness created by the note, under Stock Corporation Law, Laws 1890, p. 1079, c. 564, § 58, limiting the liability of stockholders for corporate debts.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 237.*]

Action by William T. Leighton, on behalf of himself and all other creditors; against the Leighton Lea Association and others. Heard on motion to dismiss the complaint, in which motion all defendants who appeared united. Denied.

John A. Barhite and Burlew Hill, for plaintiff.

Ednor A. Marsh, Smith, De Graff & Castleman, Heman W. Morris, Reed & Shutt, Charles M. Williams, Clarence E. Shuster, Clarence J. Browning, George A. Carnahan, Adler & Adler, Hale & Bronk, P. Cameron Shutt, Edward Lynn, Harris, Havens, Beach & Harris, Albert L. Shepard, Satterlee, Bissell, Taylor & French, McGuire & Wood, Eugene C. Denton, Webb & Vandermark, George A. Gillette, Herbert J. Menzie, Lynn Bros., George S. Tinklepaugh, Chamberlain & Page, James R. Davy, and Myron T. Bly, for defendants.

SUTHERLAND, J. This action is brought against the Leighton Lea Association and all of its stockholders for the purpose of obtaining payment of a judgment of deficiency arising on the foreclosure of a mortgage given to secure the payment of a portion of the purchase price of about 40 acres of land purchased by the association for the benefit of its members, and also to obtain payment of a judgment recovered upon a promissory note given by said association. The motion to dismiss the complaint is based upon the allegations thereof, and upon the conceded fact that the purchase-money bond given by the association along with the mortgage to Kate B. Leighton as executrix, from whom the property was purchased, was not payable until 10 years after its date.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The Leighton Lea Association was incorporated March 13, 1891, pursuant to chapter 122, p. 234, of the Laws of 1851, providing for the incorporation of building, mutual loan, and accumulating fund associations. The articles of association, as summarized in the complaint, provided that the capital stock of the corporation should be $120,000, divided into shares of $600 each, to be paid in weekly dues, and that a tract of land known as the "Leighton Lea Tract" should be purchased by the association, and, after a certain amount had been paid in upon the stock, the land should be subdivided and an allotment thereof effected, so that each member should have at least one lot, and that the whole cost of the land should be assessed upon the lots ratably in proportion to their respective values; that thereafter the members should pay in to the association dues estimated upon the value of the lots so taken until the several parcels should be paid for, and, at the end of the whole transaction, any surplus moneys remaining in the treasury of the company should be divided among the members in accordance with their rights therein. It is alleged that the defendants became members of the association and subscribers to its articles and for its stock, and were members and stockholders when the land was purchased by the association, and have been ever since. The land was purchased September 3, 1891, for $70,000, $10,000 in cash being paid thereon, and a purchase-money bond and mortgage given by the association to its grantor to secure the balance, $60,000, payable in 10 years from that date. The land was subdivided into lots, which were appraised and apportioned among the various stockholders; and later, in 1893, the articles of association were amended, and a reallotment had of 197 lots upon a reappraised value among the defendants. After the giving of the mortgage, various sums were paid from time to time thereon, but default being made in the payment of the balance due September 3, 1901, an action was commenced September 22, 1902, to foreclose the mortgage, which resulted in a sale of the portion of the premises not released from the lien of the mortgage, and a judgment for deficiency against the association was docketed July 27, 1903, for $26,077.70. Execution was issued thereon, and returned unsatisfied. The complaint alleges that a large number of the defendants have failed to pay to the association the full amount of the stock subscribed by them, and have not paid in full for the lots set off to them at the agreed valuation.

The complaint is to be considered in two aspects: (1) Wherein it sets forth a cause of action in equity in favor of its creditors to reach assets of the corporation, consisting of common-law debts owing to it by some of the defendants upon unpaid stock subscriptions, or for lots purchased by them; and (2) in so far as there is attempted to be set forth a cause of action against all of the stockholders, whether delinquent or not, upon the purely statutory liability which, because the entire capital stock had not been paid in full, inured in favor of the creditors of this corporation.

I am convinced that no statutory liability was imposed upon the stockholders in respect to the debt incurred for the purchase of the land September 3, 1891, because the statutory liability of stockholders was then limited by section 58 of the stock corporation law (chapter

564, p. 1079, Laws 1890) to debts payable within two years, and this debt was not payable until 10 years after the land was purchased. When first enacted, chapter 122, p. 234, Laws 1851, under which this association was incorporated, provided in section 11 that:

"All the shareholders of any association formed under this act shall be individually liable to the creditors of said association to an amount equal to the amount of stock held by them respectively for all debts contracted by such association."

And there was no limitation upon the kind of debts, the liability to pay which was thus imposed upon the shareholders, if they were valid debts of the corporation. This association was incorporated March 13, 1891, but the stock corporation law (chapter 564, p. 1066, Laws 1890) took effect May 1, 1891, and, when the land was purchased, section 57 provided that:

"The stockholders of every stock corporation shall, jointly and severally, be personally liable to its creditors, to an amount equal to the amount of stock held by them respectively, for all debts and contracts made by the corporation, until the whole amount of its capital stock shall have been paid in, and a certificate thereof, signed, * * * shall have been filed," etc.

And section 58 provided that:

"No stockholder shall be personally liable for any debt of the corporation not payable within two years from the time it is contracted, nor unless an action for its collection shall be brought against the corporation within two years after the debt becomes due."

Section 72 of that act also provided that:

"The provisions of this chapter, so far as they are substantially the same as those of laws existing on April 30, 1891, shall be construed as a continuation of such laws, modified or amended according to the language employed in this chapter, and not as new enactments."

If the Leighton Lea Association was a stock corporation, then the statutory liability of its stockholders for a debt incurred by the corporation September 3, 1891, was limited by sections 57 and 58 of the stock corporation law to debts payable within two years. Adams v. Wallace, 82 App. Div. 117, 81 N. Y. Supp. 848. And I am of the opinion that associations formed under the act of 1851 were stock corporations when this debt was incurred (and are now), within the meaning of that term as used by the Legislature. The legislative intent is to be gathered from all the statutes on the subject then in force. The general corporation law (chapter 563, p. 1060, Laws 1890), then stated (section 2) that:

"A stock corporation is a corporation having capital stock divided into shares."

In Buker v. Steele (Co. Ct.) 43 N. Y. Supp. 346, an action in the county court of Monroe county to recover a penalty, under the stock corporation law, incurred in 1895 for not exhibiting the stockbook of this same corporation to a stockholder, it was held that the Leighton Lea Association was a stock corporation and subject to the provisions of the stock corporation law. The Legislature of 1892 redrafted the stock corporation law, and amended the general corporation law, but

did not change the status of this association in this regard, although that status was made more clear by including building and loan associations in the division of stock corporations denominated "monied corporations." Chapter 687, p. 1801, Laws 1892, § 3; Chapter 689, p. 1843, § 2. In Buker v. Leighton Lea Ass'n, 18 App. Div. 548, 46 N. Y. Supp. 35, a dictum to the effect that the association was not a stock corporation appeared in the opinion of Mr. Justice Ward, but he stated in that connection that that question was not involved in the case. The Court of Appeals reversed the Appellate Division in that case, 164 N. Y. 557, 58 N. E. 1085, adopting the dissenting opinion of Mr. Justice Follett, who did not discuss the applicability of the stock corporation law to associations formed under the act of 1851, and I therefore do not feel constrained to follow the dictum above referred to, but adhere to the views expressed in Buker v. Steele, supra.

The facts stated, therefore, negative any statutory liability of the stockholders to pay any part of the balance of the purchase price of the land, because of the term of credit extended to the association by the vendor. The terms of the promissory note mentioned in the second count of the complaint are not set forth, and accordingly it does not appear whether or not there is any statutory liability of stockholders to pay that debt.

But it is clear that the complaint sufficiently states a cause of action in equity in favor of the plaintiff as a judgment creditor to reach and have appropriated to the payment of his judgment the common-law debts owing to the judgment debtor by some of the defendants, whether those debts are balances due upon the original stock subscriptions, or are to be considered as moneys due for the purchase price of lots allotted to the said defendants in the division of the land referred to in the complaint. These debts do not derive their validity from the sections of the corporation laws referred to, but result from contracts entered into between the corporation and the defendants when the stock was subscribed for, or when the lots were apportioned and accepted at an agreed valuation. They are part of the assets of the corporation which the plaintiff may pursue in equity, either through a receivership, or by bringing an action against the corporation and its debtors on his own behalf and for all the other creditors who come in and establish valid claims against the corporation. Stephens v. Fox, 83 N. Y. 313; Baines v. Babcock, 95 Cal. 581, 27 Pac. 674, 30 Pac. 776, 29 Am. St. Rep. 158; Ford v. Chase, 118 App. Div. 605, 103 N. Y. Supp. 30, affirmed 189 N. Y. 504, 81 N. E. 1164; Stoddard, as Assignee, v. Lum, 159 N. Y. 266, 53 N. E. 1108, 45 L. R. A. 551, 70 Am. St. Rep. 541.

The distinction between the equitable action to reach assets of the judgment debtor and the legal cause of action conferred only by statute is abundantly illustrated in the cases of Rathbone v. Ayer (No. 2), 84 App. Div. 186, 82 N. Y. Supp. 235, and Lang v. Lutz, 83 App. Div. 534, 82 N. Y. Supp. 319, and 180 N. Y. 254, 73 N. E. 24, reversing 39 Misc. Rep. 3, 78 N. Y. Supp. 200. The corporation itself has no right to invoke the statutory remedy, which is given only to the creditors, and is exercised by them without the aid of the corporation or its presence as a party. Farnsworth v. Wood, 91 N. Y. 308.

Before 1901 a stockholder who had paid in full for his stock, nevertheless could be compelled, under the statute, to pay creditors an amount equal to his stock, if the entire capital stock, by whomsoever subscribed, had not been paid in full; but in 1901 the statutory liability was reduced as to claims originating after that time, so that now, aside from the special liability to laborers, the stockholder is liable, under section 54, to creditors only for the amount which is unpaid upon his own stock; in which respect the statutory liability and the liability in equity are alike. The distinction between the two forms of action is retained, however. Rathbone v. Ayer (No. 2), supra. Prior to the amendment of 1901, the restriction upon the kind of debts for which the stockholders were liable to those due in less than two years undoubtedly applied only to the statutory liability, and did not limit the obligation of a stockholder to pay a debt he owed his corporation under the compulsion of a suit in equity brought by any judgment creditor of the corporation; and so that restriction affords no defense in this action to the stockholders who are indebted to the Leighton Lea Association, as against creditors whose claims arose before 1901, whatever the effect of the amendment of 1901 may be as to debts incurred by the corporation after that date. Close v. Potter, 155 N. Y. 145, 49 N. E. 686.

In opposition to the maintenance of this action, it is also urged that the act of the corporation in purchasing this land and in incurring the indebtedness for the purchase price was ultra vires. In my opinion it was not beyond the powers of the association to purchase the land and pledge its credit for part of the purchase price. Section 1, c. 122, p. 234, Laws 1851, states the purpose for which an association may be formed under that act to be—

"accumulating a fund for the purchase of real estate, the erection of buildings, or the making of other improvements on lands, or to pay off incumbrances thereon, or to aid its members in acquiring real estate, making improvements thereon and removing incumbrances therefrom, and for the further purpose of accumulating a fund to be returned to its members, who do not obtain advances as above mentioned, when the funds of such association shall amount to a certain sum per share, to be specified in the articles of association."

Authority to purchase real estate is thus expressly conferred upon the corporation, and it would seem as if the right to pledge its credit for a portion of the purchase price were clearly implied. Such a construction of the statute conforms to the practice of many members of the legal profession, under whose advice numerous associations have been formed under this act, which have carried through the purchase of tracts and the division thereof among the members in substantially the form followed in this instance; and my attention has not been called to any case in which the right of such association to obligate itself for the payment of the purchase price of such lands has been challenged, until the litigation arose subsequent to the foreclosure of this Leighton Lea Association mortgage. But if we concede for the moment that the original act of the corporation in purchasing the land and becoming indebted for its purchase price was beyond its strict corporate powers, it seems very clear that none of these defendants can

successfully raise that plea at this time. If the allegations of the complaint be true, this whole scheme for the corporation to purchase the land and divide it up into lots and apportion the lots among its members at an appraised value was actively promoted by these defendants with knowledge of the terms of the indebtedness incurred by the association to its grantor. Under those circumstances, the defendants must be held to have ratified the act of pledging the credit of the association for the purchase price, and although the results of the scheme have proved disappointing, there being no public right involved, these stockholders should not now be heard to raise the cry of ultra vires. Vought v. Eastern Bldg. & Loan Ass'n, 172 N. Y. 508, 65 N. E. 496, 92 Am. St. Rep. 761; Remington & Son P. & P. Co. v. Caswell, 126 App. Div. 142, 110 N. Y. Supp. 556.

And, for the purpose of a judgment creditor's action in equity, the judgment of deficiency would seem to be res judicata upon the validity of the debt owing to plaintiff by the corporation. Stephens v. Fox, 83 N. Y. 313; Cook on Stockholders (3d Ed.) par. 209; and see note, p. 266.

In support of the defense of ultra vires, counsel for defendants have referred to an opinion written at Special Term sustaining a demurrer to the complaint in the case of Leighton v. Knapp (not officially reported) 115 N. Y. Supp. 1040, in which some of these questions were involved. That was an action at law brought against a single stockholder to enforce what the plaintiff claimed to be a statutory liability. The corporation was not a party, and the action was not in equity. It was held in that case that the purchase-money debt, not being due for 10 years from its inception, is not one of the debts for which a stockholder was made liable under the statute, which is the conclusion reached here. It was also said in that case that the plaintiff could not recover, because the act of the corporation in incurring the indebtedness was ultra vires; but from that view I must most respectfully differ, for the reasons that I have endeavored to state.

It is further contended on behalf of the defendants that the plaintiff is prohibited by section 1628 of the Code of Civil Procedure from bringing an action to enforce the judgment of deficiency without first obtaining permission of the court; that section providing in substance that after an action to foreclose a mortgage has been instituted, or after the rendition of judgment therein, no other action shall be commenced to recover any part of the mortgage debt without the permission of the court. But that section must be read in connection with the one which precedes it (section 1627), authorizing the plaintiff in a foreclosure suit to join as defendants all who are liable to the plaintiff for the payment of the mortgage debt. The object of these Code provisions is to prevent the unnecessary multiplicity of actions, and to compel a plaintiff to get all the relief he can by way of a personal judgment for deficiency in the one suit. Vanderbilt v. Schreyer, 91 N. Y. 392; Robert v. Kidansky, 111 App. Div. 475, 97 N. Y. Supp. 913. Section 1628 of the Code does not refer in my opinion to an action supplemental to and in aid of the judgment of deficiency to reach assets of the corporation and apply them to the payment thereof, which could not be reached by execution issued in the first action. These stockholders could not have been joined as parties to the fore-

closure suit upon the mere allegation that they were indebted to the corporation for money due on stock subscriptions or for the purchase of land, and there could have been no personal judgment against them in the foreclosure action for any part of the mortgage debt.

Enough has been stated to indicate the limitations within which this action must be confined. Because the second count of the complaint does not more definitely describe the note referred to, it is not possible to dispose of the motion to dismiss the complaint as to stockholders concerning whom there is no allegation of failure to pay the amount due for stock subscriptions or for the lots allotted to them. If it should appear that the note was not payable within two years from its inception, or that an action was not commenced against the corporation within two years from the maturity of the note, then the complaint will be dismissed against such stockholders. As to those defendants from whom an indebtedness is set up in favor of the corporation, the present motion to dismiss the complaint must be denied.